USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/30/2021__

# Erkan & Associates, LLC
### ATTORNEYS AT LAW

300 HIGH STREET, ANDOVER, MA 01810
TLF. (978) 474-0054
FAX. (978) 474-0080
MURAT@ERKANLAW.COM
ERIC@ERKANLAW.COM

August 23, 2021

BY ECF
The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     United States v. Omar Arias Casilla et al., (AT)
    Letter-Motion to Compel Discovery

Dear Judge Torres:

On behalf of Mr. Omar Arias-Casilla ("the Defendant"), we respectfully move this Honorable Court pursuant to Fed. R. Crim. P. 16, L.C.R. 16.1, Brady v. Maryland, 373 U.S. 83, 86 (1963), and the Due Process Clause of the Fifth Amendment to the United States Constitution to Order the United States to provide discovery as detailed below, on or before October 1, 2021.

## Facts and Procedural History

The instant case concerns an allegation that the Defendant, his co-defendant, and others who are still at large conspired to sell more than 400 grams of fentanyl. A confidential source negotiated with an uncharged individual who identified himself as "Fendi" for the purchase of a large quantity of illegal narcotics. On March 8th, 2021, before the full purchase was completed, the confidential source alleges to have obtained a drug sample from Fendi, which sample Fendi directed the Defendant to furnish. On March 23rd, 2021, the confidential source met with a transporter sent by Fendi, and after a

recorded conversation, purchased approximately three kilograms of fentanyl.  The Defendant was identified through Massachusetts Registry of Motor Vehicles records.  Using Automatic License Plate Reader ("ALPR") technology, ICE agents located the Defendant's car outside of an apartment in Methuen, Massachusetts.  During a surveillance of that residence, police observed the Defendant leave the premises, arrested him and searched his home without a warrant or his consent, seizing eight kilograms of suspected fentanyl as well as several cell phones which contain incriminating communications.

The Defendant was arraigned on the instant indictment on April 20th, 2021.

The investigation leading to the instant indictment includes recordings of many conversations that were in Spanish and text messages exchanged in Spanish.  On April 22nd, 2021, Defense Counsel requested that any recorded conversations subject to discovery be furnished with English transcripts.  On April 23, 2021, Assistant United States Attorney Qian indicated via email her position that the defense should rely on the "substance of the pertinent communications" described in the complaint and agent reports.  Attorney Qian further related that the Government is not required to furnish translations until closer to trial and that if any draft translations were prepared, she would furnish the same.

On July 19, 2021, Defense Counsel requested discovery regarding the deployment of ALPR technology to locate the Defendant's vehicle, "including location of cameras in the database, whether cameras are stationary or on police cruisers, the scope of accessible data (plate numbers only or photographs, [and] other info[rmation]), records regarding queries run, whether historical data is stored and accessible, whether there are any restrictions on use or dissemination, etc."  The next day, Assistant United States Attorney Qian replied that "As for the LPR technology in this case, we do not have any Rule 16 materials relating to how Vigilant, the program that the Agent used here, works or what data they may have."  In response to further discussions, the Government has taken the position that it is not obligated to provide further information regarding the

ALPR technology because the information is not in the Government's possession custody or control.

## Argument

The Defendant requests that this Honorable Court compel the Government to furnish 1) English language transcripts of the Spanish language conversations in this case; 2) any and all discovery related to the use of ALPR technology in this case in the possession of the Government or its agents.

### 1. Spanish Language Transcripts

The Defendant's liability as to the March 23, 2021 transaction in this case rises and falls on what may be gleaned in the recorded conversations and messages leading up to the delivery.  If convicted, either after trial or pursuant to a change of plea, the sentencing guidelines will be controlled, in large part, on his role in the offense as evidenced by the recorded conversations and texts.  The Defendant has the right to have his counsel review the evidence and advise him of the merits of the Government's case against him.  He also has the right to a fair guideline calculation which will be highly dependent on his role in the offense, which role can only be understood after full consideration of all pertinent communications.

However, virtually all of the pertinent evidence is in Spanish, and the Government sees no duty to furnish that evidence to counsel in the language of the Court - which is English.

In Brady v. Maryland, the Supreme Court held that the Due Process Clause of the 5th Amendment requires the Government to disclose evidence favorable to a defendant. Brady, 373 U.S. 83 at 86.  This discovery requirement includes not only admissible evidence but also information which may lead to admissible evidence in the Defendant's favor. United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007).  It also includes information that may not relate to the defendant's culpability, but to sentencing. See Cone v. Bell, 556 U.S. 449 (2009) (defendant's sentence was vacated because evidence irrelevant to the defendant's insanity defense but pertinent to determining

punishment was suppressed).  The purpose of the Government's discovery obligation is to "serve the objectives of both fairness and accuracy in criminal prosecutions." Rodriguez, 496 F.3d 221 at 225.  Critical to the principle of fairness is timing.  A Defendant must be given either the opportunity to use the evidence at trial or "to use the information to obtain evidence for use in the trial." Id. at 226.

The Government's obligation to provide evidence in English to the Defendant has primarily been litigated in the First Circuit because it contains the District Court of Puerto Rico. 48 U.S.C.S. § 864 (the Jones Act) requires that all pleadings and proceedings in the District Court of Puerto Rico be in English.  The First Circuit has interpreted the Jones Act as establishing the language of the federal court as English and ruled that "[p]roviding an English-language transcript...is necessary." United States v. Morales-Madera, 352 F.3d 1, 7 (1st Cir. 2003).  In 2014, the Government represented to the First Circuit that, going forward, "any recordings in Spanish [will] be transcribed and translated at the indictment stage and given to defense counsel at or shortly after arraignment." United States v. Flecha-Maldonado, 373 F.3d 170, 177-178 (1st Cir. 2004).  The First Circuit warned that it would "hold the Office to that representation." Id.

The reasoning behind the First Circuit's interpretation of the Jones Act applies to other jurisdictions as well.  The court reasoned in Morales-Medina that failing to provide English transcripts in America, "unfairly disadvantage[s] non-Spanish-speaking attorneys[.]" Flecha-Maldonado, 373 F.3d 170 at 177. It would make little sense to require the Government to furnish English language transcripts only in a district in which "Spanish is the primary language of most of the population," and not in every other district, where it is not. Morales-Medina, 352 F.3d 1 at 7.  Unsurprisingly, the First Circuit made clear that the duty to furnish English language transcripts of foreign recordings applies in all 1st Circuit districts (not just Puerto Rico). United States v. Kifwa, 868 F.3d 55, 60 (1st Cir. 2017).

The Government's obligation to provide English transcripts of foreign language recordings flows not from the Jones Act, but

from the fact that "[i]t is clear, to the point of perfect transparency, that the federal court proceedings must be conducted in English." United States v. Rivera-Rosario, 300 F.3d 1, 5 (1st Cir. 2002). The clarity that mandates provision of English transcripts of foreign language recordings "adequately in advance" of trial – again – not as a peculiarity of the Jones Act, but as a function of "[s]ound trial management and considerations of fairness." Morales-Medina, 352 F.3d 1 at 8.

The Southern District of New York has echoed the reasoning of the First Circuit, that providing the Defendant with evidence in Spanish is insufficient to satisfy the Government's discovery obligations under Brady. The language of the court is English. Duarte v. Highland Light Steam Laundry Co., 2021 U.S. Dist. LEXIS 30228, 5 (S.D.N.Y. Feb. 16, 2021); Michael Hyungsup Kim v. Chung Sook Lee, 2019 U.S. Dist. LEXIS 164388 (S.D.N.Y. Sep. 24, 2019), both citing to Rivera-Rosario, 300 F.3d 1. Documents not in English must be accompanied by an English translation. Michael Hyungsup Kim, 2019 U.S. Dist. LEXIS 164388. These cases make clear that Defendants in the Southern District have a right to English translations of foreign-language statements. While the 2nd Circuit Court of Appeals has addressed whether the Government must turn over translations of all statements prior to trial pursuant to Fed. R. Crim. Proc. 16, it has not addressed whether failing to do so violates a criminal defendant's 5th Amendment right. United States v. Thai, 29 F.3d 785 (2d Cir. 1994). In other words, the 2nd Circuit Court of Appeals is silent as to whether translations are required under the 5th Amendment as interpreted in Brady. In criminal cases, a defendant's constitutional rights are at least as robust as those of a civil defendant, and translations should be provided. See United States v. Bin Laden, 397 F. Supp. 2d 465, n. 49 (S.D.N.Y. 2005) (where the Judge ordered the Government to produce translations during discovery of a videotaped interview between an informant and the Government); See also United States v. Cabrera, 2018 U.S. Dist. LEXIS 154808, 20 (W.D.N.Y. Aug. 8, 2018) (where the defendant requested English translations of statements made by witnesses in Spanish and the court ordered the Government to comply).

As previously mentioned, the Government's case revolves around Spanish recordings and text messages. For the Defendant to adequately investigate his case, and for defense counsel to adequately advise his client, the Government must provide English transcripts. The Defendant is incapable of translating the recordings into English himself, which is a requirement for the evidence to be used in his defense or at sentencing. Under Rodriguez, the Government's role in discovery is to ensure fair and accurate criminal proceedings. It is not the Government's role to decide which portions of the discovery are accessible to the Defendant. By selecting which recordings will be translated according to their own trial strategy, the Government is denying the Defendant access to information which may lead to admissible evidence in the Defendant's favor. Defense counsel requires English translations in order to investigate the allegations and advise his client.

Additionally, delaying the production of translations until the eve of trial further erodes the Defendant's access to due process. Were the Government to wait until trial to translate the recordings, which is their position, the Defendant would have insufficient time to prepare his defense. Alternatively, if the Defendant chooses to change his plea rather than hold the Government to its burden, the Government's position would allow them to never provide translations, therefore never providing defense counsel with the information needed to properly advise his client. Under Rodriguez, a defendant must be given the opportunity to investigate. Here, the recordings involve multiple individuals speaking with the informant, some of whom are still at large. A thorough investigation is required to discover the extent of the Defendant's participation in the alleged conspiracy, which is a core factor in deciding the Defendant's options in resolving his case.

Lastly, by refusing to translate the recordings in whole, the Government is saddling the Defendant with the cost of translation. Effectively, the Government seeks to burden the Defendant with the cost of interpreting the evidence against him. Requiring the Government to provide English transcripts is designed to avoid "impos[ing] considerable costs on defendants and the courts." Flecha-Maldonado, 373 F.3d 170, at 177. The

Defendant should not have to pay for access to justice, nor should the court shoulder the financial burden of the Government's case.  By providing recordings which are central to the allegations against the Defendant in a format which renders them inadmissible in court, the Government has undermined the fairness of the criminal proceedings.  The language of the court is English, and the Defendant should be provided the evidence in the language of the court.

**2. ALPR Deployment**

The government located the Defendant and identified his vehicle and residence through deployment of ALPR technology. The Government has declined to provide any discovery regarding its use of that technology in this case beyond a one-page printout showing the Defendant's vehicle location on March 16, 2021.

The use of ALPR technology may constitute a search, depending on the pervasiveness of the technology which agents accessed and their ability to access historical data.  While neither the Supreme Court nor the 2nd Circuit has addressed this issue, the saturation of a city or region with automatic license plate reader technology capable of creating a detailed or historical record of the movements of its citizenry appears to be controlled by Carpenter v. United States, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018). See also United States v. Tuggle, No. 20-2352, 2021 U.S. App. LEXIS 20841, at *28 (7th Cir. July 14, 2021) (recognizing that a majority of the Supreme Court has effectively "endorsed the mosaic theory of privacy.") citing Paul Ohm, The Many Revolutions of Carpenter, 32 Harv. J. Law & Tec 357, 373 (2019).

If discovery suggests that ALPR data used in this case is akin to the CSLI data in Carpenter, then the agents' access to the data here constitutes a search, for which a warrant was required but not obtained.  Suppression of its fruits - including the narcotics and telephones seized - will be necessary. Cf. Leaders of a Beautiful Struggle v. Balt. Police Dep't, No. 20-1495, 2021 U.S. App. LEXIS 18868, at *37 (4th Cir. June 24, 2021) (use of a network of aircraft capturing and recording vehicle and pedestrian movements in Baltimore

constituted a warrantless search; "[Mass surveillance] touches everyone, but its hand is heaviest in communities already disadvantaged by their poverty, race, religion, ethnicity, and immigration status.") (internal citations omitted).

The Government asserts that it has no discovery regarding the ALPR used in this case because Vigilant Solutions - the company which furnishes the data to law enforcement - is outside of its possession, custody or control.

While it is true that the Government has no obligation to furnish discovery maintained by private entities, when law enforcement forms relationships with those entities, the government's duty to furnish discovery is implicated. See, e.g., United States v. Stein, 488 F. Supp. 2d 350, 363-64 (S.D.N.Y. 2007) (deferred prosecution agreement granting government authority to demand documents from accounting firm created rule 16 discovery obligations). Compare United States v. Holihan, 236 F. Supp. 2d 255, 260 (W.D.N.Y. 2002) ("The Second Circuit has not analyzed the phrase 'in possession, custody, or control of the government' in connection with [Rule 16]") with United States v. Santiago, 46 F.3d 885, 893 (9th Cir. 1995), quoting United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858, 107 L. Ed. 2d 124, 110 S. Ct. 167 (1989), (information is "in the possession of the government" if the prosecutor "has knowledge of and access to the documents sought by the defendant.")

Here, a special relationship exists between the government and Vigilant Solutions - the corporation which provided ALPR data to investigators in this case. In 2018, Immigration and Customs Enforcement awarded a contract to Vigilant Solutions for access to its ALPR technology.[1] ICE Agent Sean Rafferty used the Vigilant technology to locate the Defendant's vehicle. Where

---

[1] See, e.g., Lily Hay Newman, Internal Docs Show How ICE Gets Surveillance Help From Local Cops, Wired.com (March 13, 2019) available at https://www.wired.com/story/ice-license-plate-surveillance-vigilant-solutions/. According to Newman, "internal documents show that through its Vigilant Solutions contract, which began in 2018 and runs to September 2020, ICE has access not only to 5 billion records gathered by private businesses, but also to 1.5 billion data points contributed by over 80 local law enforcement agencies from more than a dozen states."

the government obtained and used the technology for law enforcement purposes, it cannot turn a blind eye to questions regarding the constitutionality of that technology.

Moreover, because the knowledge of its agents is imputed to the government, the government must make inquiry of them to satisfy Brady. Kyles v. Whitley, 131 L. Ed. 2d 490, 115 S. Ct. 1555, 1565, 1567-68 (1995) (An individual prosecutor is presumed to have knowledge of all information gathered in connection with her office's investigation of the case and indeed "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); see also United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995).

Consequently, the Defendant respectfully requests that this Honorable Court compel the United States to provide full discovery regarding the use ALPR technology in this case, including, but not limited to:

- The government's contract with Vigilant Solutions
- location of cameras in the Vigilant database to which agents had access
- whether cameras are stationary or on police cruisers
- the scope of accessible data (including whether the ALPRs capture plate numbers only or other information including photographs of vehicles or their occupants)
- records regarding queries run and data returned, as pertains to the Defendant or his vehicle
- information regarding whether historical data is stored and accessible by law enforcement
- information regarding which agencies or individuals are granted access to ALPR data
- information regarding any restrictions on use or dissemination of ALPR data

**Conclusion**

For the aforementioned reasons, the Defendant requests this Honorable Court order the Government to: a) provide all Spanish recordings which were provided in discovery to be translated; and b) provide discovery regarding ALPR deployment in this case.

    Respectfully submitted,
    /s/Murat Erkan
    Murat Erkan

**CERTIFICATE OF SERVICE**

I, Attorney Murat Erkan, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 23, 2021.

/s/ Murat Erkan
Murat Erkan, MA BBO 637507

By **September 7, 2021,** the Government is directed to file its response, if any.

SO ORDERED.

Dated: August 30, 2021
    New York, New York

_____
ANALISA TORRES
United States District Judge