UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: __7/6/2022____ |

UNITED STATES OF AMERICA,

-against-

OMAR ARIAS-CASILLA,

                                        Defendant.

21 Cr. 218-1 (AT)

**<u>ORDER</u>**

ANALISA TORRES, United States District Judge:

Defendant, Omar Arias-Casilla, moves for an order suppressing evidence obtained

from searches of (1) a basement apartment (the "Apartment") in Methuen, Massachusetts,

where Defendant was allegedly residing at the time of his arrest, Def. Mot. I, ECF No. 41; and

(2) five cellphones—two seized incident to his arrest, and three from the Apartment, Def. Mot.

II, ECF No. 42.  For the reasons stated below, the motions are GRANTED as to the use of

evidence seized from the Apartment in the Government's case-in-chief, and otherwise

DENIED.

**BACKGROUND**

Defendant is charged in an indictment with one count of narcotics conspiracy in violation

of 21 U.S.C. § 846.  *See generally* Indictment, ECF No. 5.  Specifically, the Indictment charges

Defendant and Co-Defendant, Leonardo Andujar Mendez,[1] with "conspiring to distribute and

possess with intent to distribute [] 400 grams or more of mixtures and substances containing a

detectable amount of fentanyl."  *Id.* ¶ 3.

On March 24, 2021, Special Agent Christopher Gulino swore out a criminal complaint

(the "Complaint") in support of an application for a warrant for Defendant's arrest.  Compl., ECF

---

[1] Mendez pleaded guilty to narcotics conspiracy, a lesser included offense of Count One of the Indictment, and was sentenced to time served by this Court on January 25, 2022.  ECF No. 51; *see also* 9/9/2021 Dkt. Entries.

No. 42-2; *see also* ECF No. 1.  According to the Complaint, in February 2021, a confidential source (the "Informant") was made aware of individuals distributing "white China rice," a term for fentanyl, in Massachusetts.  Compl. ¶ 5a.  The Informant subsequently received a call from a person who referred to himself as "Fendi," stating that Fendi had associates in Massachusetts and asking if the Informant would travel to Massachusetts to "check the product."  *Id.* ¶ 5b.

On March 2, 2021, Fendi provided the Informant with a telephone number for a cellphone.  *Id.* ¶ 5c.  Later that week, the Informant received a call from that number and spoke to an individual "later identified as [Defendant]" to coordinate a meeting time and location.  *Id.* ¶¶ 5c–e.  The Informant phoned Defendant on that number, and communicated with him through the messaging application WhatsApp several more times to coordinate this meeting.  *See id.* ¶¶ 5c, 5e, 5f.  The Informant also called Fendi to confirm that if the "car" was good, (understood to be a reference to the fentanyl), he would buy some quantities, and pay for the transport from Massachusetts to New York.  *Id.* ¶ 5d.  Gulino understood this to mean that the Informant had agreed to buy fentanyl from Fendi.  *Id.*

On March 8, 2021, the Informant traveled to Massachusetts for the meeting with Defendant, communicating with Defendant on his phone and WhatsApp, to coordinate the time and location of the meeting.  *See id.* ¶ 5e.  During the meeting, Defendant gave the Informant a "chunky substance wrapped in plastic," which Gulino states, based on his training and experience, was a "sample of suspected fentanyl."  *Id.* ¶ 5f.  Defendant allegedly told the Informant to try the sample and that he "would not regret it."  *Id.*

The Informant subsequently received a call from Fendi who urged the Informant to "check the sample quickly," because his associates only had limited quantities of "cars" remaining.  *Id.*  On March 8, 2021, the Informant identified Defendant to law enforcement from

2

a photo array.  *Id.* ¶ 6.  In a March 10, 2021 phone call with Defendant, the Informant told Defendant that the Informant had provided the sample Defendant had given him to others, and that he would let Defendant know later if those individuals liked it.  *Id.* ¶ 5g.  The Informant then coordinated a purchase of fentanyl with Fendi.  *See id.* ¶ 5h–5n.  Co-Defendant Leonardo Andujar Mendez was arrested by law enforcement when he attempted to deliver 3.5 kilograms of fentanyl to the Informant.  *Id.* ¶¶ 5n–5q.  Based on the Complaint, on March 25, 2021, the Honorable Kevin Nathaniel Fox issued a warrant for Defendant's arrest.  *See* 3/25/2021 Dkt. Entry.

Following Defendant's arrest, on April 5, 2021, Gulino swore out an affidavit (the "Affidavit") in support of a search warrant for six devices connected to Defendant and Mendez—three seized from the Apartment, two seized from Defendant incident to his arrest, and one seized from Mendez incident to his arrest.  Aff. ¶¶ 3, 12, ECF No. 42-1.  According to the Affidavit, on March 26, 2021, when Defendant was arrested leaving the Apartment in Methuen, Massachusetts, officers seized two phones from Defendant's person.  *Id.* ¶¶ 9a, 12b.

After the arrest, law enforcement officers spoke with the "landlord" of the Apartment (the "Landlord") who first told them that Defendant was trespassing, and was not authorized to be in the Apartment.  *Id.* ¶ 9b.  The Landlord consented to a search of the Apartment.  *Id.*  Following the search, the Landlord told the officers that her boyfriend had allowed Defendant to stay in the Apartment because Defendant had promised to pay rent.  *Id.* ¶ 9d.  The Affidavit states that "[t]o date, neither [the Landlord], nor her boyfriend ha[ve] received any rental payments from [Defendant]."  *Id.* ¶ 9d.  Officers recovered fentanyl, cocaine, cash, and three phones from their search of the Apartment.  *Id.* ¶¶ 9c, 12c.

Defendant claims that he resided in the Apartment, was current on his rent, and that police found a "rent receipt" inside the Apartment.  Def. Aff. ¶¶ 1, 2, 9, ECF No. 41-1.  The receipt, for a payment of $1,400, is dated March 4, 2021, states it is from "Omar," and bears a signature resembling that of the Landlord.  *See* ECF No. 41-7; Def. Mot. I at 6.

On April 5, 2021, the Honorable Stewart D. Aaron issued a warrant (the "Warrant") permitting the seizure and search of the six devices in question.  Warrant, ECF No. 42-3.  The Warrant permitted law enforcement to review electronically stored information on the devices for "evidence, fruits, and instrumentalities," relating to the "Subject Offenses," which it defines as narcotics trafficking in violation of 21 U.S.C. § 841, and conspiracy to traffic narcotics in violation of 21 U.S.C. § 846.  Warrant at 1, Attach. A § II.  The Warrant enumerates eleven categories of information subject to seizure:

1. Evidence concerning the identity or location of, and communications with, co-conspirators involved in the Subject Offenses;

2. Evidence concerning incoming and outgoing calls and opened and unopened voicemail messages related to the Subject Offenses;

3. Communications, including  . . . text messages . . . [and] any attachments to those text messages . . . and any associated information, such as the phone number or user ID from which the text message was sent, pertaining to the Subject Offenses;

4. Evidence concerning the identity or location of, and communications with, individuals purchasing, selling, or storing narcotics or otherwise involved in the Subject Offenses;

5. Evidence concerning the location of narcotics and narcotics proceeds;

6. Calendar or other scheduling information related to the Subject Offenses (including . . . travel itineraries and meetings with co-conspirators);

7. Historical location data, including GPS data, showing the user's movements;

8. GPS searches related to the Subject Offenses (including  . . . travel and

meeting locations related to drug distribution);

9. Bank records, checks, credit card bills, account information, and other financial records relating to the Subject Offenses;

10. Digital photographs and video relating to the Subject Offenses; and

11. Evidence of user attribution showing who used or owned the [s]ubject [d]evices at the time the records and items described in [the Warrant] were created, edited, or deleted, such as logs, communications, phonebooks, saved usernames and passwords, documents, photos, videos, and browsing history.

*Id.* Attach. A § II(1)–(11).

## DISCUSSION

I.     Apartment Evidence

Defendant moves to suppress evidence obtained from the warrantless Apartment search, arguing in part that the Landlord's consent to the search was invalid.  *See generally* Def. Mot. I. The Government represents that it does not plan to use the seized evidence in its case-in-chief at trial, but argues that even assuming the evidence was seized illegally, it is entitled to offer such evidence at sentencing, and the Court must consider it.  Gov't Opp'n at 1, 1 n.1, ECF No. 60. The Court agrees.

In *United States v. Tejada*, the Second Circuit held that "[a]bsent a showing that officers obtained evidence expressly to enhance a sentence, a district judge may not refuse to consider relevant evidence at sentencing, even if that evidence has been seized in violation of the Fourth Amendment."  956 F.2d 1256, 1263 (2d Cir. 1992); *see also United States v. Johnson*, 24 F. App'x 70, 72 (2d Cir. 2001) ("A district court is required to consider all relevant evidence at sentencing, even if unconstitutionally obtained.").  The Court need not, therefore, rule on whether the Apartment search violated the Fourth Amendment, because even if it so found, the Court would still be required to consider this evidence at sentencing.

5

Defendant argues that the Court should hold an evidentiary hearing "to determine the narrow issue of whether the 'officers obtained evidence [from the Apartment] expressly to enhance [his] sentence.'"  Def. Reply at 6, ECF No. 61 (quoting *Tejada*, 956 F.2d at 1263). Defendant also asks the Court to "hold that it will not consider" evidence from the Apartment at sentencing.  *Id.* at 10.  But, because any sentencing in this matter is currently only hypothetical, these requests are premature.  Should this matter proceed to sentencing—after Defendant pleads guilty or is convicted at trial—Defendant may request a hearing pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), to resolve any factual disputes in advance of sentencing. *See United States v. Salim*, 287 F. Supp. 2d 250, 258, 273 (S.D.N.Y. 2003).  Accordingly, Defendant's motion to suppress evidence seized from the Apartment is GRANTED as to use of such evidence in the Government's case-in-chief, and otherwise DENIED.  *See United States v. Faltine*, No. 13 Cr. 315, 2014 WL 4370811, at *10 (E.D.N.Y. Sept. 2, 2014).

II.      Phone Evidence

Defendant next seeks to suppress evidence seized from five phones pursuant to the Warrant—two of which were recovered incident to his arrest and three of which were recovered from the Apartment—arguing (1) there was insufficient probable cause to search and seize evidence from all five phones; (2) the Warrant was insufficiently particularized; and (3) the good-faith exception should not apply in this case because Gulino "knowingly misled" the issuing magistrate judge.  *See generally* Def. Mot. II.  Again, the Government represents that it does not intend to introduce evidence from the three phones seized from the Apartment in its case-in-chief.  Gov't Opp'n at 6 n.3.  Defendant's motion to suppress evidence from those three phones is, accordingly, GRANTED only as to the use of such evidence in the Government's

case-in-chief.[2]  The Court addresses Defendant's arguments only as to the two phones seized

incident to his arrest.

A.  Probable Cause

Defendant first argues that the Affidavit failed to establish sufficient probable cause to

search more than one cellphone.  Def. Mot. II at 7–9.  The Court disagrees.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized."  U.S. CONST. AMEND IV.  "[P]robable cause is a fluid concept—

turning on the assessment of probabilities in particular factual contexts."  *Illinois v. Gates*, 462

U.S. 213, 232 (1983).  The standard "does not demand certainty, but only a 'fair probability'

that . . . evidence of a crime will be found."  *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir.

2004) (citing *Gates*, 462 U.S. at 238).  And, where a search has been conducted pursuant to a

court-authorized warrant, "great deference" is due to a magistrate's determination that there is

probable cause for a search.  *United States v. Leon*, 468 U.S. 897, 914 (1984) (citation omitted).

The reviewing court does not evaluate the issuing of a warrant *de novo*, but rather

"simply . . . ensure[s] that the totality of the circumstances afforded the magistrate a substantial

basis for making the requisite probable cause determination."  *United States v. Lustyik*, 57 F.

Supp. 3d 213, 224 (S.D.N.Y. 2014) (citing *United States v. Clark*, 638 F.3d 89, 93 (2d Cir.

2011)).

---

[2] The Court notes, however, that binding Supreme Court and Second Circuit precedent expressly permits the introduction of illegally obtained evidence for impeachment purposes, *see United States v. Havens*, 446 U.S. 620, 627–28 (1980); to refresh a witness' recollection, *see United States v. Kusek*, 844 F.2d 942, 949 (2d Cir. 1988), and, as discussed, at sentencing, *see Tejada*, 956 F.2d at 1263.  Even assuming the three phones from the Apartment were illegally seized, this order does not limit the use of such evidence for these purposes.

The Affidavit plainly sets forth facts which establish that there is a "fair probability" that evidence of Defendant's involvement in a narcotics conspiracy would be located on cellphones seized from his person.  First, the Affidavit describes in detail Gulino's experience as a narcotics investigator, and his understanding, based on that experience, that narcotics traffickers often store records relating to their illegal activities and that of other participants on electronic devices, including cellphones.  Aff. ¶¶ 1, 14.  Courts routinely find probable cause "to search cellphones possessed by defendants arrested in connection with [narcotics] crimes based on the experience of agents familiar with narcotics trafficking that traffickers commonly use cellphones to communicate in the course of their narcotics distribution, as well as to store relevant information."  *United States v. Hoey*, No. 15 Cr. 229, 2016 WL 270871, at *9 (S.D.N.Y. Jan. 21, 2016) (collecting cases).  The Affidavit also sets forth "particularized evidence" connecting the seized phones to Defendant's alleged crimes, specifically noting that Defendant "used a cellphone to communicate with [the Informant]" to coordinate delivery of the sample to him, and that Defendant used WhatsApp to communicate with both the Informant and Mendez.  Aff. ¶ 13. The Affidavit incorporates the Complaint by reference, which provides further details as to Defendant's use of cellphones in furtherance of his alleged crimes.  *See* Compl. ¶ 5.  The Affidavit, therefore, "easily provided probable cause to believe that [the cellphones] were used in committing narcotics crimes and would yield evidence of such offenses."  *Hoey*, 2016 WL 270871, at *9.

Defendant next argues that, at best, the Affidavit only establishes probable cause as to one of the cellphones seized from him, because the underlying Complaint "makes clear that the communication [between Defendant and the Informant] was done with one specific cellphone." Def. Mot. II at 7.  But, courts have found probable cause to search multiple cellphones obtained

incident to a defendant's arrest in similar cases, even where the government introduces no evidence of specific communications sent from, or received by, the seized phones. *United States v. Barret*, 824 F. Supp. 2d 419, 447–49 (E.D.N.Y. 2011).  In such cases, courts find probable cause where, as here, the underlying affidavit establishes the defendant's involvement in the charged narcotics crimes, and cites the attesting agent's belief that the phones at issue contain evidence of charged crimes, based on that agent's experience that drug traffickers frequently "store relevant information" on their phones. *Id.*  Not only does the Affidavit set forth this information, as discussed, it also provides evidence that Defendant used at least one cellphone to communicate with the Informant and Mendez, his co-conspirator, in furtherance of the alleged criminal activity.  Aff.  ¶¶ 9, 13, 14.  This provides a substantial basis for a magistrate to conclude that any phones seized from Defendant's person incident to arrest "would contain evidence, fruits, and instrumentalities of a narcotics conspiracy," even if the Affidavit does not specifically reference communications from each phone. *See United States v. Estime*, No. 19 Cr. 711, 2020 WL 6075554, at *19 (S.D.N.Y. Oct. 14, 2020).

The Court finds, therefore, that the Affidavit provided sufficient probable cause for the seizure and search of both phones obtained incident to Defendant's arrest.

B.  Particularity

Defendant next argues that the Warrant lacks sufficient particularity.  Def. Mot. II at 9–12.  The Second Circuit has found that, to be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements.  First, "a warrant must identify the specific offense for which the police have established probable cause." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013).  Second, "a warrant must describe the place to be searched."

9

*Id.* at 445–46 (citation omitted).  Finally, the "warrant must specify the items to be seized by their relation to designated crimes."  *Id.* at 446 (citation and quotation marks omitted).

The Warrant readily meets the relevant particularity requirements.  It identifies the offenses for which Defendant was under investigation—specifically, narcotics trafficking and conspiracy to traffic narcotics.  *See* Warrant at 1.  *Cf. United States v. Zemlyansky*, 945 F. Supp. 2d 438, 454 (S.D.N.Y. 2013) (finding warrant insufficiently particularized where it failed to "offer any indication of the relevant criminal allegations.").  It describes the "place to be searched"—the devices at issue.  Warrant at Attach. A § I.  And, it enumerates eleven categories of items to be seized, *id.* Attach. A § II(1)–(11), each of which plainly bears a "connection to [the] suspected crime[s]," creating a clear "limitation[] or constraint[] . . . on the executing officers' authority to seize items."  *United States v. Wey*, 256 F. Supp. 3d 355, 386 (S.D.N.Y. 2017).

Defendant nevertheless argues that the last enumerated category—which permits seizure of "[e]vidence of user attribution showing who used or owned the [phones] at the time the records and items described in this warrant were created, edited, or deleted, such as logs, communications, phonebooks, saved usernames and passwords, documents, photos, videos, and browsing history," Warrant at Attach. A § II(11),—is overbroad.  Def. Mot. II at 9–12.  The Court disagrees.  Contrary to Defendant's assertions, this clause would not permit seizure of "virtually anything on each phone."  *Id.* at 11.  It only permits seizure of those items that demonstrate a nexus between "records and items described" in the Warrant—each of which have a clear connection to the underlying criminal offenses—and the user of the phone when such items were created or modified.  *See United States v. Rosario*, No. 19 Cr. 807, 2021 WL 5647879, at *6 (S.D.N.Y. Dec. 1, 2021) (finding a similar clause to be sufficiently

10

particularized).  Moreover, courts routinely reject the assertion that an "illustrative, but not exhaustive" list of items that may be seized in a particular category gives reviewing officers unfettered authority to seize "all evidence" of that nature—rather, courts generally find that such lists "offer[] sufficient guidance to law enforcement officers to pass constitutional muster." *Lustyik*, 57 F. Supp. 3d at 228 (collecting cases).  The contested clause is, therefore, sufficiently particularized, and does not provide a basis for suppression.

      C.   Overbreadth

    Third, Defendant argues that the Warrant is overbroad on two grounds: first, because it does not limit the search to relevant areas of the phones, but instead permitted agents to "look through their entire contents" and "extract a wide range of data," and second, because the Warrant contains no temporal limitations.  Def. Mot. II at 12–13.

    "Although somewhat similar in focus," particularity and overbreadth "are two distinct legal issues." *Zemlyansky*, 945 F. Supp. 2d at 450 (citation omitted).  Particularity looks to whether the warrant "enable[s] the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize," *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992), and the overbreadth inquiry asks "whether the warrant authorized the search and seizure of items as to which there is no probable cause."  *United States v. Dupree*, 781 F. Supp. 2d 115, 148 n.14 (E.D.N.Y. 2011) (quotation marks omitted).  Thus, a warrant is overbroad if its "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based."  *Galpin*, 720 F.3d at 446 (citation omitted).

    Defendant's first argument lacks merit.  The unique nature of electronic searches often require the "normal sequence of search, and then selective seizure" to be "turned on its head, as [devices are] seized from a suspect's premises before [their] content is known and then searched

at a later time." *United States v. Nejad*, 436 F. Supp. 3d 707, 728 (S.D.N.Y. 2020) (citation and quotation marks omitted).  The Second Circuit has analogized searches of entire electronic devices to warrants "allow[ing] the government to search a suspected drug dealer's entire home where there is probable cause to believe that evidence relevant to that activity may be found anywhere in the residence." *United States v. Ulbricht*, 858 F.3d 71, 102–03 (2d Cir. 2017), *abrogated in part on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018).  For this reason, courts in this Circuit routinely uphold the validity of warrants that, as in this case, "authorize[] searches of the entirety of [a] [cellphone] for data responsive to [a] warrant[]," provided the three particularity requirements above are met.  *United States v. Gatto*, 313 F. Supp. 3d 551, 560 (S.D.N.Y. 2018); *see also Ulbricht*, 858 F.3d at 102–03.  Defendant cites no authority compelling a contrary conclusion.

Second, Defendant argues that the Warrant's failure to delineate a time frame renders it overbroad.  Def. Mot. II at 12–13.  The Second Circuit has not addressed the interplay between the absence of a time frame and the particularity of a search warrant, but district courts in this Circuit generally agree that "a time frame is relevant, [although] there is no apparent consensus as to when one is required."  *See United States v. Cohan*, 628 F. Supp. 2dd 355, 366–67 (E.D.N.Y. 2009) (emphasis omitted) (collecting cases); *see also United States v. Hernandez*, No. 09 Cr. 625, 2010 WL 26544, at *11 (S.D.N.Y. Jan. 6, 2010) (noting that a temporal limitation is "not an absolute necessity, but is only one indicium of particularity." (citation omitted)).  Certainly, "[a] warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render" that warrant overbroad or insufficiently particularized.  *United States v. Costin*, No. 5 Cr. 38, 2006 WL 2522377, at *12 (D. Conn. July 31, 2006) (collecting cases).  However, "[t]he complexity and duration of the

alleged criminal activities" may "render a time frame less significant than in a case that required

a search for a small set of discrete items related to one or only a few dates." *Hernandez*, 2010

WL 26544, at *11.

As discussed, the Warrant readily meets the relevant particularity requirements. *See*

*supra* at 9–11.  The absence of a temporal limitation alone does not render the Warrant

overbroad, because the Warrant limits seizure to items and information related only to

Defendant's alleged narcotics-related criminal activity. *See id.* at 9–10.  And, the underlying

criminal conduct—an alleged inter-state conspiracy to distribute fentanyl with numerous

participants—was "complex and concerned a long period of time, not simply one or two dates of

criminal activity," *United States v. Jacobson*, 4 F. Supp. 3d 515, 526 (E.D.N.Y. 2014), thus

diminishing the importance of a fixed time frame in light of the Warrant's otherwise

particularized nature.

### D.  Good Faith Exception

Even if the Court were to find that the lack of a temporal limitation renders the Warrant

overbroad or insufficiently particularized, the Court would not suppress the evidence, because

the good-faith exception to the exclusionary rule applies in this context.  This exception permits

the Government to introduce evidence obtained in violation of the Fourth Amendment when the

executing officer "acts in 'objectively reasonable reliance on a subsequently invalidated search

warrant.'"  *In re 650 Fifth Ave. and Related Props.*, 934 F.3d 147, 162 (2d Cir. 2019) (quoting

*Leon*, 468 U.S. at 922).  Reliance is unreasonable, however, "(1) where the issuing magistrate

has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her

judicial role; (3) where the application is so lacking in indicia of probable cause as to render

reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Id.* (quoting *Clark,* 638 F.3d at 100).

None of these scenarios are applicable.  There is no evidence the issuing magistrate judge was "knowingly misled" by Gulino as to the two phones seized incident to Defendant's arrest.[3] Because the Affidavit provided sufficient probable cause for the issuance of the Warrant, and because the Warrant meets the three indicia of particularity required by Second Circuit precedent, *see supra* at 9–11, there is no reason to conclude that the issuing magistrate judge "wholly abandoned" his role, or that the Warrant lacks sufficient indicia of probable cause.

Finally, the absence of a time frame could not render the Warrant so facially deficient that reliance on it is unreasonable.  The standard of reasonableness in the context of suppression "mirrors that in the context of qualified immunity," and "where there is no clearly established law establishing a warrant's invalidity, reliance on it cannot be said to be objectively unreasonable for purposes of the good-faith inquiry."  *Nejad*, 436 F. Supp. 3d at 732.  As discussed, there is "no consensus" in this Circuit as to when warrants require a time frame, "or when the lack thereof alone may invalidate an otherwise valid search warrant."  *Id.*  For that reason, even if the Court were to hold that the lack of a time frame renders the Warrant overbroad, there is no basis to conclude that a "reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization."  *Leon*, 468 U.S. at 922 n.23.

---

[3] Defendant points to the receipt found in the Apartment to argue that the issuing magistrate was "knowingly misled," because the Affidavit represents that the Landlord had not received "any rental payments" from Defendant. Def. Mot. at 16; *see also* Aff. ¶ 9.  The receipt does not state that the payment was for rent.  *See* ECF No. 41-7.  But, even if the Court assumes Defendant's claim constitutes a misrepresentation, it only provides a basis to suppress evidence from the three phones seized from the Apartment—not the two phones seized from Defendant's person incident to arrest *prior to* the Apartment's search.

Accordingly, Defendant's motion to suppress is GRANTED as to the three phones seized from the Apartment, only to the extent that the Government is precluded from using such evidence in its case-in-chief, and otherwise DENIED.

## CONCLUSION

For the reasons stated above, Defendant's motions to suppress are GRANTED as to the use of evidence seized from the Apartment in the Government's case-in-chief, and otherwise DENIED.  The Clerk of Court is directed to terminate the motions pending at ECF Nos. 41 and 42.

SO ORDERED.

Dated: July 6, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge

15